IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| CARLOS COLON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carlos Colon ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Costco Wholesale Corporation ("Defendant" or "Costco"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

## NATURE OF THE ACTION

1.  Defendant labels, advertises, and sells cranberry juice products (the "Products")[1] throughout the United States, including in Massachusetts. Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

2.  Because Defendant's sales are driven by health-conscious consumers seeking

---

[1] The Products encompass all of Defendant's canned and bottled juices that are advertised as containing "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES" but contain ascorbic acid.

products that are free from preservatives, Defendant prominently displays on the label of its Products that they contain "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES." Defendant's Products, however, contain "ascorbic acid"—a well-known preservative used in food products.

3.   As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

4.   Plaintiff is a consumer who asserts claims on behalf of himself and similarly situated purchasers for unjust enrichment, breach of express warranty, and violations of Mass. Gen. Laws Ch. 93A, *et seq*.

## JURISDICTION AND VENUE

5.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.   This Court has personal jurisdiction over Defendant because a substantial portion of the events giving rise to this cause of action occurred here.

7.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this cause of action occurred here.

## PARTIES

8.   Plaintiff Carlos Colon is a citizen of Massachusetts who resides in Charlestown, Massachusetts.  Mr. Colon has purchased the Products for his personal use at various times during the applicable statute of limitations.  Most recently, in or around January 2023, Mr. Colon

purchased a Kirkland Signature Ocean Spray Cranberry Premium 100% Juice from a local Costco store located in Everett, Massachusetts for approximately $9.  In purchasing the Product, Mr. Colon relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES."  Mr. Colon understood that "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES" meant that the Product did not contain any preservatives, but in fact the Product he purchased did contain ascorbic acid, a preservative.  Had Mr. Colon known that the "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES" representation was false and misleading, he would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

9. Defendant Costco Wholesale Corporation is a corporation organized under the laws of Washington with its headquarters at 999 Lake Drive, Issaquah, WA 98027.

## GENERAL ALLEGATIONS

*Overview of Defendant's False Preservative Claims*

10. Defendant advertises and displays on the front labels of the Products that they contain "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES," thereby misleading reasonable consumers into believing that the Products are free from preservatives.  However, the Products contain ascorbic acid, a well-known and well-documented preservative.  Defendant's most recent labeling of the Products, along with their ingredient panels, are depicted below:





11. The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

12. Ascorbic acid is a chemically modified form of vitamin C, which, pursuant to FDA regulations, is commonly used in foods as a preservative. 21 C.F.R. § 182.3013.

13. Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness. Although Defendant identifies ascorbic acid as a source of vitamin C, Defendant adds it for its preservative qualities as well.

14. The FDA regulates the use of ascorbic acid in the formulation of wine and juice "to prevent oxidation of color and flavor components of juice," and it "may be added to grapes, other fruit (including berries), and other primary wine making materials or to the juice of such materials." 27 C.F.R. § 24.246.

15. Based on industry standards, Defendant added ascorbic acid to the Products, which contain cranberries, to prevent their "oxidation of color and flavor"—something which happens so often to these juice products, that it prompted the FDA to promulgate the pertinent preservative regulations set forth above. *Id.*

16. The FDA also classifies and identifies ascorbic acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how ascorbic acid is used as a preservative in beverages.[2]

---

[2] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-

6

17. The FDA's view of this matter is further bolstered by a warning letter that it sent to Chiquita Brands International, Inc., indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions."[3]

18. The USDA has also recognized that "[a]scorbic acid is most commonly used as a preservative to prevent enzymatic browning reactions that occur during processing and post-processing storage."[4] Moreover, the USDA found that "all commercial ascorbic acid [is] synthetically derived."[5]

19. Based on the foregoing, Defendant's use of ascorbic acid in its Products renders its "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES" representation false and misleading. This is true even if Defendant's subjective intention was to add ascorbic acid to impart taste/tartness or vitamin supplement to the Products. This conclusion is buttressed by the fact that ascorbic acid can function as a preservative even when it is used only in trace amounts.[6]

20. Even if the Products' ascorbic acids do not, in fact, function as a preservative in

---

colors (last accessed November 30, 2022)

[3] FDA, Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated (Oct. 6, 2010), available at http://web.archive.org/web/20101109083452/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm228663.htm (last accessed February 23, 2023)

[4] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf

[5] *Id.* at 10.

[6] *See* Taylor & Francis, *Antimicrobials In Food* 108, 113 (P. Michael Davidson et al. eds., 3d ed. 2005), http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last accessed February 2, 2023).

the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so.  *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration,") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[7] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving") (emphasis added).[8]

### *Defendant Capitalizes on Consumer's Demand for Preservative-Free Foods*

21. By representing the Products have "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES," Defendant seeks to capitalize on consumers' preference for products with no preservatives.  Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods.  In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).  Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[9]

22. According to another study, when consumers were asked to choose a product that

---

[7] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[8] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

[9] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

was the closest to their understanding of what "natural" means on product labels, they often chose products with "No Preservatives" labels.[10]

23. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[11] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

24. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

25. Plaintiff seeks to represent a class defined as all persons in the United States who during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household consumption, and not for resale (the "Nationwide Class").

26. Plaintiff also seeks to represent a subclass defined as all Class members who reside in Massachusetts who purchased the Products (the "Massachusetts Subclass").

27. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party

---

[10] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[11] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

retailers and vendors.

28. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; whether Plaintiff and the members of the Classes are entitled to statutory damages; and whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

29. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

30. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

31. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also

presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Breach of Express Warranty
### (On behalf of the Nationwide Class)

32. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

33. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

34. Defendant, as the marketer, distributor, and/or seller, expressly warranted that the Products contain no "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES."

35. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Nationwide Class.

36. In fact, the Products do not conform to Defendant's representations and warranties because the Products contain ascorbic acid, a well-documented preservative. By falsely representing the Products in this way, Defendant breached express warranties.

37. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained a preservative.

38.     On May 23, 2023, prior to filing this action, Defendant Costco was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

## COUNT II
## Unjust Enrichment
## (In the Alternative)

39.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

40.     Plaintiff brings this claim individually and on behalf of members of the Classes against Defendant.

41.     Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

42.     Defendant has knowledge of such benefits.

43.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contains "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES" when in fact it contains ascorbic acid, a well-documented preservative.

44.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT III
### Violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, et seq.

45. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant.

47. Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

48. Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

49. Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale Products that directly or indirectly affect the people of Massachusetts.

50. By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the

conduct of trade or commerce.

51. Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

52. Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

53. Defendant's conduct is also misleading in a material way by representing on the packaging of the Products that it contains "NO ARTIFICIAL COLORS, FLAVORS OR PRESERVATIVES." Despite that representation, however, the Products contain ascorbic acid, a well-documented preservative.

54. Plaintiff and members of the Massachusetts Subclass suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

55. Mass. Gen. Laws Ch. 93A, et seq. represents a fundamental public policy of the Commonwealth of Massachusetts.

56. For each loss, Plaintiff and each member of the Massachusetts Subclass may recover an award of actual damages or twenty-five dollars, whichever is greater. Ch. 93A § 9(3).

57. Because Defendant acted willfully or knowingly, Plaintiff and each member of the Massachusetts Subclass may recover up to three but not less than two times this amount. In addition, Plaintiff may recover attorneys' fees and costs.

58. Plaintiff and the members of the Massachusetts Subclass may also pray for the imposition of injunctive relief which limits and polices Defendant's representations within or reaching Massachusetts. The balance of the equities favors the entry of permanent injunctive

relief against Defendant.  Plaintiff, members of the Classes, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant.  Plaintiff, members of the Classes, and the general public lack an adequate remedy at law.  A permanent injunction against Defendant is in the public interest.  Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

59. In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff's counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief on May 23, 2023.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit 1**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carlos Colon, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the Massachusetts Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and the Massachusetts Subclass, and Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and the Massachusetts Subclass members;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiff, the Nationwide Class and the Massachusetts Subclass on all counts asserted herein;

(d) For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)     For an order awarding Plaintiff and the Nationwide Class and the Massachusetts Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: October 17, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joel D. Smith*
    Joel Smith

Joel D. Smith (BBO No. 712418)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com
      jdiamond@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

# BURSOR & FISHER
### P.A.

**1330 Avenue of the Americas**
**NEW YORK, NY 10019**
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: **646.837.7150**
Fax: **212.989.9163**
fklorczyk@bursor.com

May 19, 2023

<u>*Via Certified Mail – Return Receipt Requested*</u>

Costco Wholesale Corporation
999 Lake Drive
Issaquah, WA 98027

Costco Wholesale Corporation
c/o C T Corporation System
155 Federal St., Suite 700
Boston, MA 02110

Re:   *Notice and Demand Letter Pursuant the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 9(3), and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Costco Wholesale Corporation ("You" or "Defendant") pursuant to numerous provisions of Massachusetts and federal law, including but not limited to the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 9(3), on behalf of our client, Carlos Colon, and all other similarly situated purchasers of Kirkland Signature Ocean Spray Cranberry Premium 100% Juice. This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express warranties described herein.

You have participated in the marketing and sale of Kirkland Signature Ocean Spray Cranberry Premium 100% Juice (the "Product"). The Product's labeling represents that it contains "No Artificial Colors, Flavors or Preservatives." This representation is false and misleading because the Product contains ascorbic acid. Ascorbic acid is recognized by the U.S. Food and Drug Administration to be a preservative.[1] By representing that the Product contains "No Artificial Colors, Flavors or Preservatives," You are misleading consumers into believing that they are purchasing cranberry juice that is free of preservatives.

Mr. Colon purchased bottles of Product from a Costco store in Everett, Massachusetts in or around January 2023. Mr. Colon purchased the Product based on the Product's representations, reasonably believing that it did not contain any artificial preservatives. However, the Product he purchased did, in fact, contain an artificial preservative—ascorbic acid.

---

[1] https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

BURSOR&FISHER
P.A.

Mr. Colon would not have purchased the Product, or would have paid significantly less for the Product, had he known it contained an artificial preservative.

Mr. Colon is acting on behalf of a class defined as all persons in the United States who purchased the Product. Mr. Colon is also acting on behalf of a subclass of all persons who purchased the Product in the State of Massachusetts.

To cure these defects, we demand that you make full restitution to all purchasers of the Product of all money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the sourcing, production, and/or testing of the Product;

2. All documents concerning the advertisement, labeling, marketing, or sale of the Product;

3. All documents concerning communications with purchasers of the Product, including but not limited to customer complaints; and

4. All documents concerning your total revenue derived from sales of the Product in Massachusetts and the United States.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Frederick J. Klorczyk III